### A95A2369. PRICE v. THE STATE.
(469 SE2d 333)

ANDREWS, Judge.

George S. Price, Jr., appeals from his conviction of one count each of aggravated sodomy and child molestation. The acts were alleged to have been committed against his two stepdaughters, N. M. and K. M., ages ten and six at time of trial. We reverse.

1. Viewed with all the evidence in favor of the jury's verdict, it was that Price and Joann Price were both married to others when they first met in 1989. Price had a son by his first marriage and Joann had N. M. and K. M. by her first husband. The two were eventually married after divorcing their respective spouses.

N. M. and K. M. regularly visited their paternal grandparents, the Morrises. On January 23, 1993, Mr. Morris, his daughter Pam, and her two children were in the family room when Mrs. Morris brought K. M. out of the bedroom and told K. M. to tell her grandfather and Pam what she had told her. K. M. then said that "George had put diseases in my mouth." At this point, N. M. was asleep in another bedroom. Mr. Morris got up from his seat and approached two-year-old Justin, another grandchild, to pick him up from the couch. He knelt down to pick him up and K. M. said "that's the way George does it." She then ran to the couch and lay down with her head off the edge and said "this is the way I lie." The next morning, Mrs. Morris brought N. M. into the kitchen where Pam was sitting and N. M. said that George rubbed "his thing" on her backside.

The children's natural father was called and came to the grandparents' home where K. M. told him she wanted Price to stop putting "his thing" in her mouth. N. M. would not say anything to her father, but cried. The allegations were reported to the Department of Family & Children Services (DFACS) and the police and investigation and prosecution ensued.

The children were interviewed by a DFACS representative and a detective on January 25, 1993. That interview was taped and played during trial and both children also testified at trial.

The evidence was legally sufficient. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Farmer v. State,* 215 Ga. App. 243 (450 SE2d 271) (1994).

2. The first enumeration is that the court erred in allowing DFACS representative Bitterman to testify concerning Mrs. Price's

out-of-court statement to Bitterman that she believed her daughters.

At trial, on direct examination of Ms. Bitterman by the State, the following exchange occurred: "Q. Did you see her reaction as to the news, as to what [K. M.] and [N. M.] had told you and [Detective] Morelock? A. Uh-huh (affirmative). She — at first, it was disbelief; she was shocked. We then allowed her to watch some of the video tape that we had made . . . and then she of course cried a lot and said, . . . , that she believed what her children." At this point, objection was made that the statement was hearsay and that it was improper to allow one person to determine another's credibility. The court overruled these objections on the ground that the statement helped explain Bitterman's conduct. Bitterman had testified that it was up to her to determine whether the children would be released into their mother's custody or not.

Bitterman was then asked: "Q. After she saw the video tape, her reaction was — what were the words? A. She was crying and she said she believed her daughters after seeing it." The objections were renewed and overruled.

(a) The repetition of an out-of-court statement made to the witness by another is hearsay. OCGA § 24-3-1 (a). Nonetheless, since Mrs. Price testified at trial and was subject to cross-examination by defense counsel, the statement was admissible. *Calloway v. State*, 199 Ga. App. 272, 273 (2) (404 SE2d 811) (1991); *Lynn v. State*, 181 Ga. App. 461, 464 (2) (352 SE2d 602) (1986); see *Duck v. State*, 210 Ga. App. 205, 207 (3) (435 SE2d 725) (1993). There was no error in its admission over the hearsay objection.

(b) "In no circumstance may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth. . . . [Cit.] Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury. OCGA § 24-9-80." *State v. Oliver*, 188 Ga. App. 47, 50 (2) (372 SE2d 256) (1988); *Smith v. State*, 259 Ga. 135, 138 (2) (377 SE2d 158) (1989); *Guest v. State*, 201 Ga. App. 506, 507 (1) (411 SE2d 364) (1991). Such improper bolstering is exactly what occurred here.

Because there was no evidence of the molestation except the testimony of the two children, this bolstering of their credibility by Bitterman's repetition of their mother's statement cannot be said to have been harmless. *Roberson v. State*, 214 Ga. App. 208, 210 (4) (447 SE2d 640) (1994); *Guest*, supra. Compare *Knight v. State*, 207 Ga. App. 846 (1) (429 SE2d 326) (1993).

To say that the statement of Mrs. Price "explained the conduct" of Ms. Bitterman pursuant to OCGA § 24-3-2 does not justify its admission. The question of whether Mrs. Price would be given custody of the children pending the trial was not relevant to the issue of

Price's guilt or innocence, a condition precedent to admission under that Code section. *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982); *Jackson v. Dunkin' Donuts*, 211 Ga. App. 598, 599 (440 SE2d 56) (1993).

3. Because the matters dealt with in the third and fourth enumerations are likely to recur during any retrial, they are addressed.

(a) Price contends that the playing of the videotape containing the interviews of N. M. and K. M. was error.

Before the video of the January 25, 1993 interviews with the children was played, counsel for Price objected on several grounds.

(1) First was "the circumstances under which they [the video interviews] were made." Relying on *Knight v. State*, 210 Ga. App. 228 (1) (435 SE2d 682) (1993) and *Rolader v. State*, 202 Ga. App. 134, 139 (1) (413 SE2d 752) (1991), objection was made that the statements were "clearly made for the purpose of gathering evidence and gathering incriminatory evidence against Mr. Price. They were not in a neutral place; this was not a neutral ground. . . ." The record and the video reflect that, while the interviews were conducted at the sheriff's department, they were conducted in a room furnished to look like an average residential living room, with an upholstered couch and chairs. While the video camera was not concealed, otherwise the circumstances are very similar to those in *Knight*, supra. As stated therein, the "reference to a neutral interviewer and place of interview in *King* [*v. State*, 194 Ga. App. 662 (2) (391 SE2d 660) (1990)] should be recognized as relating to the atmosphere, circumstances, and manner in which the interview was conducted." *Knight*, supra at 229 (1). The video reveals that the room in which the interview was conducted fulfilled this requirement.

(2) The second ground for objection was that the video was repetitive of testimony already given by others. This ground has also been decided adversely to Price. *Guest v. State*, 216 Ga. App. 457, 458 (3) (454 SE2d 622) (1995); *Knight*, supra at 230 (2).

(3) Finally, a hearsay objection was made during the playing of the video because K. M. made statements about what Price had allegedly done to N. M. It is clear from the video, however, that these statements were not based on K. M.'s observations, but on what others in the family had told her. Therefore, as to this portion of the video only, the objection was valid. *Thornton v. State*, 264 Ga. 563, 564 (2) (a) (449 SE2d 98) (1994); *Riddle v. State*, 208 Ga. App. 8, 11 (2) (430 SE2d 153) (1993).

The remaining objections to the video are raised here for the first time and will not be considered.

(b) The fourth enumeration alleges error in the trial court's allowing the State to introduce evidence of Price's violation of condi-

tions of his bond forbidding his going near the children. Mrs. Price testified that he had appeared outside her and the children's house in violation of the bond before trial began.

The objections made below to the introduction of State's Exhibit 2, Price's Appearance Bond, were that it was "not relevant and that it's highly prejudicial," it placed Price's character in issue, and there was no evidence the conditions of the bond were violated. Here, however, the argument made is failure to comply with Uniform Superior Court Rule 31.3, which was not raised below and will not be considered here for the first time.

As noted by the trial judge, such evidence may be admissible under some circumstances. *Morgan v. State*, 240 Ga. 845, 846 (1) (242 SE2d 611) (1978); see *Matthews v. State*, 258 Ga. 144, 145 (1) (366 SE2d 280) (1988); *Carroll v. State*, 155 Ga. App. 514, 515 (1) (271 SE2d 650) (1980).

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 12, 1996.

*Jill L. Anderson, Virginia W. Tinkler*, for appellant.
*David McDade, District Attorney, Lee O'Brien, Assistant District Attorney*, for appellee.