A01A1887. TURNER v. THE STATE.
(560 SE2d 539)

PHIPPS, Judge.

A jury found David Turner guilty of false imprisonment and two counts of child molestation for confining twelve-year-old T. C. in a room and placing his hand and his mouth on her breast. On appeal, he contends that the trial court erred by allowing a videotape of T. C.'s interview about the incident to go out with the jury during its deliberation, by refusing to redact commentary on the videotape which he claims improperly bolstered T. C.'s credibility, and by failing to merge the false imprisonment count into the child molestation counts. He also contends that the prosecutor engaged in misconduct during closing argument, that the evidence was insufficient to support his conviction for false imprisonment, and that he received ineffective assistance of counsel. Because the record demonstrates no reversible error, we affirm.

The evidence showed that on Friday, February 12, 1999, T. C. stayed after school waiting to attend a program scheduled for that evening. At about 7:00 p.m., she entered a computer lab to use a telephone there. Turner, then a janitor at the school, was using the telephone and asked T. C. to wait. T. C. testified that after Turner ended his telephone conversation, he closed the door, turned off the light, approached her, and asked whether she had ever fantasized about having sex with him. She answered, "No." She testified that she was then sitting on a table and that Turner stood in front of her, pushed her back, lifted her shirt and bra, and touched her breast with his mouth and hands "hard enough to where it hurt." She stated that "[t]here was nothing [she] could do." T. C.'s aunt, who was 15 years

old at the time of trial, testified that T. C. told her about the incident that same evening and made her promise to keep it secret.

The following Tuesday, T. C.'s mother was called to the school. Her mother testified that when she arrived, T. C. was "very upset and crying really hard" and told her that Turner had cornered her the previous week and had fondled her breast with his hands and mouth. Police were called to the school, and T. C. reported the incident to an officer. Photographs taken that day were introduced at trial and showed bruising on T. C.'s breast, which T. C. attributed to Turner.

About two weeks after the incident, an employee of the Georgia Center for Children conducted a forensic interview with T. C. A videotape of the interview, played for the jury, showed T. C. describing her encounter with Turner.

Turner testified at trial that he had worked for the school system for 15 years. He testified that he was using the telephone in the computer lab that evening around 7:00 when T. C. walked in and asked to make a call. He stated that he allowed her to do so and that she thanked him and hugged him. He recalled that the hug "wasn't like a regular hug. And [he] pushed her off." He denied touching her breast and stated that the lights remained on. In addition, Turner presented witnesses who testified that he was of good character and good reputation and that they would believe him under oath.

1. Turner contends that the evidence was insufficient to support his conviction for false imprisonment. He urges there is no evidence that he "locked the door, barred the exit or ever told [T. C.] she was not free to leave." On appeal, we do not weigh the evidence or assess the credibility of witnesses but determine only whether the evidence, viewed in a light most favorable to the verdict, was legally sufficient under the standard of *Jackson v. Virginia*.[1]

"To prove false imprisonment all that is required is there be an arrest, confinement or detention of the person, without legal authority, which violates the person's personal liberty (i.e., against his or her will)."[2] There was evidence that Turner confined 12-year-old T. C. by closing the door, turning off the light, standing in front of her as she sat on a table, and pushing her back, rendering her unable to resist. This evidence is sufficient to sustain Turner's conviction for false imprisonment.[3] Further, the evidence of Turner placing his hands and mouth on T. C.'s breast and his comments to her about

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Gordon v. State*, 244 Ga. App. 265, 266-267 (1) (535 SE2d 289) (2000).

[2] (Citation and punctuation omitted.) *Armstrong v. State*, 244 Ga. App. 871, 872 (1) (537 SE2d 147) (2000); OCGA § 16-5-41 (a).

[3] See *Jackson*, supra; *Rehberger v. State*, 235 Ga. App. 827-828 (1) (510 SE2d 594) (1998).

sexual fantasies meet the *Jackson v. Virginia*[4] standard to support the jury's finding that Turner was guilty beyond a reasonable doubt of two counts of child molestation.[5]

2. Turner contends that the trial court erred by failing to redact from the videotaped interview commentary which he claims bolstered T. C.'s credibility. The videotape showed that within the first two minutes of the interview, the interviewer explained to T. C. that she wanted the truth and that T. C. should not "guess" or "fill in the blanks" or "make up stuff." The interviewer then asked T. C. what she thought was the difference between "don't know" and "don't remember." T. C. answered that "don't know" means that "you don't know at all, like, or it probably didn't happen," and that "don't remember" means "it happened but you don't actually, like, remember when, or. . . ." The interviewer then stated, "you can't think of it. . . . OK." Thereafter, the interviewer said, "Yeah, very good definition. OK. So let me know if you don't remember." Turner maintains that the interviewer bolstered T. C.'s credibility by stating that T. C. had provided a "good definition."

"In no circumstance may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth."[6] But that is not what happened here. The interviewer did not say that she believed T. C. or that T. C. was not likely to lie. Rather, she commented on T. C.'s understanding of the difference between "not knowing" and "not remembering." Because the videotape shows that no bolstering occurred here, the trial court did not err in refusing to redact that portion of the videotaped interview.[7]

3. Turner contends that the trial court erred in allowing the videotape to go out with the jury during its deliberation because doing so violated the "continuing witness" rule. The record shows that no such objection was made when the videotape was introduced or when it was sent to the jury room. Consequently, this issue has not been preserved for appellate review.[8]

4. Turner maintains that the State engaged in prosecutorial misconduct by presenting "misleading" statements during closing argument. The record shows that no objection was made during or after

---

[4] Supra.

[5] See *Hudson v. State*, 251 Ga. App. 592, 593 (1) (554 SE2d 781) (2001) (11-year-old's version of what occurred between her and defendant, as told to her mother, the examining physician, and the jury, was sufficient to support a conviction for child molestation); *Anderson v. State*, 237 Ga. App. 382-383 (1) (515 SE2d 195) (1999).

[6] (Citations and punctuation omitted.) *Price v. State*, 220 Ga. App. 176, 177 (2) (b) (469 SE2d 333) (1996).

[7] See generally *Edwards v. State*, 253 Ga. App. 479, 483 (5) (a) (559 SE2d 506) (2002); compare *Price*, supra at 176-177 (2) (mother's statement that "she believed her daughters" improperly bolstered the daughters' credibility).

[8] *Mason v. State*, 274 Ga. 79, 81 (3) (548 SE2d 298) (2001).

closing argument. Consequently, this issue has not been preserved for appellate review.[9]

5. Turner received a sentence of fifteen years, to serve five, for the two counts of child molestation and ten years, to serve five, for the false imprisonment count. He contends that the false imprisonment count should have merged with the two counts of child molestation because the same facts supported all three offenses and the acts occurred at the same time and place and therefore constituted one continuous act.

Although the acts constituting false imprisonment and the acts constituting child molestation were committed at the same time and place, they did not merge. In determining whether multiple offenses merge, the key question is whether the same facts proved the different offenses.[10] In this case, the indictment charged that Turner committed false imprisonment by violating T. C.'s personal liberty by confining her and that he committed child molestation by placing his hand and mouth on her breast with the intent to arouse and satisfy his sexual desires. Since the false imprisonment count could be proved by facts different from the child molestation counts and sufficient evidence was adduced of those different facts to support the jury's findings of guilt,[11] the trial court did not err by not merging the false imprisonment count into the child molestation counts.[12]

6. Turner contends he received ineffective assistance of counsel. To succeed on this claim, Turner must demonstrate that his attorney's performance was deficient and that the deficiency prejudiced his defense.[13] We need not address both prongs of this test if the showing on one prong is insufficient, nor must we address them in any particular order.[14] Turner's post-trial attorney filed an amended motion for new trial, alleging ineffective assistance of trial counsel. After a hearing, the trial court denied the motion. We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[15]

First, Turner complains that his trial counsel inadequately investigated his case because counsel did not interview various members of the school staff that he claims were "potential witnesses" who

---

[9] *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996).

[10] *Gooch v. State*, 249 Ga. App. 643, 648 (5) (549 SE2d 724) (2001).

[11] See Division 1, supra.

[12] See *Peavy v. State*, 159 Ga. App. 280, 283-284 (3) (283 SE2d 346) (1981) (no merger for kidnapping and enticing a child for indecent purposes, where each offense had elements not contained in the other and each offense was proved using different facts).

[13] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Anderson*, supra at 383-384 (2).

[14] *Cowan v. State*, 243 Ga. App. 388, 396 (10) (531 SE2d 785) (2000).

[15] Id.

may have been able to impeach T. C.'s testimony. But the content of their testimony is mere speculation because the potential witnesses did not testify at the motion for new trial hearing. Without such evidence, Turner cannot meet his burden of affirmatively showing how trial counsel's failure affected the outcome of his case.[16]

Second, Turner complains that his trial counsel did not subpoena A. B., one of T. C.'s friends. At the motion for new trial hearing, Turner presented A. B.'s pretrial statement to police, wherein he stated that a girl said that she had seen the incident, that T. C. told him that "Mr. Green," another school janitor, had tried to have intercourse with her, that T. C. later told him that she "was just playing," and that T. C. told another girl that "it was true." A. B. did not testify at the hearing on the motion for new trial, however, and his statement constitutes hearsay. The trial court determined, "[A] written statement, made by a child under who knows what circumstances, not subject to explanation or cross-examination, is not sufficient evidence to persuade this court to grant a new trial." The trial court did not clearly err.[17]

Third, Turner complains that his trial counsel was ineffective by failing to object to the prosecutor's remarks made during closing arguments which he complains were misleading. During the trial, Turner's counsel asked T. C., "[I]f [A. B.] says you told him Mr. Green was the one that had done something to you, he would have been mistaken then; is that what you're saying?" T. C. answered, "yes," at which point, the transcript indicates that Turner's counsel handed something to T. C. to see whether it would refresh her memory. T. C. then stated, "Well, I don't know if [A. B.] got Mr. Green and Mr. Turner mixed up."

During closing argument, the prosecutor addressed this exchange, telling the jury:

> [A] reference to Mr. Green was made during this trial, and it was made by the defense attorney in the case. There is no evidence that the victim in this case, [T. C.], ever said Mr. Green did this to her. Absolutely none. That was a reference by [the defense attorney]. You have no evidence before you that she ever said anybody other than Mr. Turner did this to her.

Turner complains that such argument was "blatantly false and misleading," pointing to A. B.'s written statement to police. But the statement was not introduced into evidence, and the record demon-

---

[16] See *Bruce v. State*, 252 Ga. App. 494, 499 (2) (a) (i) (555 SE2d 819) (2001).

[17] See *Brice v. State*, 242 Ga. App. 163, 167 (6) (529 SE2d 178) (2000).

strates that the prosecutor permissibly argued the state of the evidence before the jury.[18] It follows that trial counsel was not deficient by not objecting.

Finally, Turner contends that his trial counsel was ineffective because he failed to make a "continuing witness" objection regarding the videotape of T. C.'s interview going out with the jury. However, we cannot consider this portion of Turner's claim because his motion for new trial did not complain of it and this argument was not made at the motion for new trial hearing.[19] Because Turner failed to make this argument at the earliest practicable opportunity, it is waived.[20]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 15, 2002.

*Virginia W. Tinkler*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Charles C. Flinn, Assistant District Attorneys*, for appellee.

---

[18] See *Spear v. State*, 270 Ga. 628, 630 (3) (513 SE2d 489) (1999).

[19] Whether counsel was ineffective in failing to raise this argument is an issue we do not reach.

[20] See *Render v. State*, 240 Ga. App. 762 (a) (525 SE2d 134) (1999); *Green v. State*, 240 Ga. App. 650, 654 (3) (523 SE2d 632) (1999); *Curry v. State*, 238 Ga. App. 511, 520 (3) (c) (519 SE2d 269) (1999).