### 38782. NICHOLSON v. THE STATE.

HILL, Presiding Justice.

Defendant Gilbert Nicholson was convicted of the shotgun murder of his stepson, Wendell Steven Wade. He received a life sentence and appeals.

The defendant and his wife, Dorothy Nicholson, lived with her son (the victim) and her ex-son-in-law, Darrell Huffman, at 2 Minchew Drive in Floyd County.[1] Next door, at 3 Minchew Drive, lived Dorothy's daughter (Darrell's ex-wife), Sylvia Huffman, and another of Dorothy's sons, Frank Atkins.

The victim spent the evening of January 23, 1981, with Frank Atkins, Darrell Huffman and a friend, Ricky Smith, playing cards, watching television and drinking beer at 3 Minchew Drive. The victim left to go home to bed a little before 12:00 p.m. At that time, Ricky Smith had gone home, and Huffman and Atkins had dozed off in front of the television. Sylvia Huffman was not at home yet; she was working from 7:30 p.m. to 3:00 a.m. at a restaurant. The victim's mother, Dorothy Nicholson, left just before 12 p.m. to work the midnight shift at Klopman Mills. All of them testified that the defendant had been drinking for the better part of the day and night and was quite drunk. When Dorothy Nicholson left for work she said the defendant was watching television; the victim started her car for her and watched her drive away from the porch next door.

After 3:00 a.m., Sylvia came home from work and got ready for bed. Frank Atkins was asleep in his room and Darrell was watching television at her house.[2] After she had gotten in bed but was not yet asleep, the defendant came in and started hollering that someone had been shooting at the house. Then he fixed himself a glass of soda

---

[1] On the evening of January 23, 1981, Darrell Huffman was watching TV at 3 Minchew Drive, and was not at 2 Minchew Drive.

[2] Darrell testified that when he woke up from dozing in front of the television at about midnight, the victim was not there. He then took a shower. While in the shower he heard the door open, looked out and saw no one; then, as he resumed his shower he heard the door once more, but did not look out again. He assumed incorrectly that Sylvia had gotten home from work.

water before announcing to Darrell and Sylvia that he thought Steve was dead. They rushed next door and found the victim's body lying on the couch, where he often slept, with his head on a pillow. He had been killed by a shotgun blast, which the forensic experts testified was fired at a 45° to 90° angle near his left ear from a distance of less than 3 inches. The victim's shotgun, which he normally kept in his car, was lying on the floor about four feet away. The defendant's only statement to the family and to the police after they arrived was that he had not done it. A spent shotgun shell was found under a seat cushion on a nearby couch about 2 feet away from the victim's head. It was shown by the state to have been fired from the victim's shotgun. No shots were heard by any of the witnesses.

Hand wipings for evidence of having fired a gun were taken of the defendant with no positive results. Similarly, no latent fingerprints were found. The time of death was fixed at some time after 1:00 a.m., January 24, 1981.

The state also presented testimony from Ricky Smith, Darrell Huffman, Sylvia Huffman, and Dorothy Nicholson that each of them had heard the defendant, when he was drinking, say he was going to get the victim for having caused him to lose his leg.[3] In May, 1976, the victim and defendant had gotten into an argument during which one of them had picked up a shotgun. While they were tussling with it, the gun went off, hitting the defendant in the leg, which had to be amputated. Dorothy Nicholson stated that the defendant, while drunk, often threatened to kill anyone whom he imagined had wronged him and that she never believed he would carry out these threats. She did say, however, that he had many times stated that he would kill the victim to get even with him for losing his leg and had bragged that he would get away with it if he "could keep his mouth shut." Most of the witnesses also testified that, except when the defendant had been drinking, the victim and the defendant got along all right.

At trial, the defendant stated that he had gone to bed about midnight (after his wife left for work, but before the victim had come in); that a little while later a noise awakened him; that, when reaching for his whiskey to fix himself another drink, he realized he had no water, and decided to get up and get some; and that he put on his pants, artificial leg and shoes, and walked into the kitchen to get a glass of water. At that time, he noticed that something was wrong with the victim and that the victim's shotgun was lying on the floor. The defendant then went next door to alert the others.

---

[3] The admissibility of this evidence is challenged in Division 2, infra.

The defendant denied ever having threatened to kill the victim for the loss of his leg, and claimed always to have blamed himself for the accident. In addition to attempting to show that he was not drunk, the theory of the defense was that someone else had entered the house and killed the victim or that he had committed suicide.

1. In enumerations of error 1, 2 and 5, the defendant challenges the sufficiency of the evidence and, in enumeration 4, he contends the circumstantial evidence is insufficient under Code Ann. § 38-109. In making each of these contentions, the defendant basically claims that because the possibilities of suicide or of an intruder who killed the victim were not negated, the circumstantial case against him cannot stand. We disagree.

The state's case included evidence of threats made against the victim's life by the defendant when drunk, that the defendant was drunk at the time of the victim's death, that the victim and the defendant were alone in the house, that the defendant was fully dressed and aware of the victim's death shortly after it happened, as well as the defendant's demeanor when he announced the news to the family next door. Forensic and firearms experts presented evidence of the physical facts of the shooting, including the angle and distance of the shotgun muzzle from the victim's head. Further facts were developed showing that the shotgun was ordinarily kept in the victim's locked car, the distance and placement of the shotgun from the body, and concerning the presence of the spent shotgun shell under the cushion of the other couch. These facts were sufficient to create a jury issue as to whether a homicide had taken place and as to whether the defendant had committed it. Therefore, we find no error in denying the motions for directed verdict and for a new trial. Further, we find that viewing the evidence in the light most favorable to the verdict, that the properly charged jury reasonably could have found it excluded every other hypothesis save the guilt of the accused, Code Ann. § 38-109; *Eason v. State,* 217 Ga. 831 (2) (125 SE2d 488) (1962), and that it is sufficient to meet the standards required by Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We find no merit in enumerations of error 1, 2, 4 and 5.

2. In enumeration of error 3, defendant complains that the prior threats of the defendant were improperly admitted. In *Gunter v. State,* 243 Ga. 651, 656 (256 SE2d 341) (1979), we said: "In a murder prosecution, evidence of prior quarrels and difficulties between the defendant and the victim, which persist until the time of the killing, thereby shedding light upon the motive of the killing and explaining conduct, is admissible. [Cits. omitted.]" The defendant argues that under this test, the threats were inadmissible because evidence was presented that the defendant and the victim got along well together

and because there was no evidence that the threats persisted until the time of the killing. Further, he claims that the witnesses' refusal to answer questions as to the times of the threats denied him a thorough and sifting cross-examination.

The testimony was that when the defendant was drinking he threatened to get even with the victim for the loss of his leg. Ricky Smith testified that he heard the defendant make such a threat as recently as a week and a half before the incident here under review. Thus, we find no merit in defendant's contention that the threats were inadmissible. *Davis v. State,* 233 Ga. 638, 639 (212 SE2d 814) (1975).

Nor do we find that the defendant was denied his right to cross examine these witnesses on this point. Those who were questioned, like Ricky Smith, answered his questions; others were not questioned specifically about the timing of the threats, and they answered the questions that were asked regarding the nature of the threats against the victim. We find no reversible error presented by enumeration 3.

In enumerations of error 6 and 8, the defendant argues that the state was improperly allowed to impeach its own witnesses as to their statements about the relationship between the defendant and the victim without laying the foundation required by Code Ann. § 38-1801. We cannot agree. The state in no way impeached these witnesses but merely sought to clarify that the defendant and the victim got along together except when the defendant was drinking and threatening to kill the victim.

3. There was no error, as alleged in enumeration 7, in admitting into evidence the photograph of the whiskey bottle on the kitchen table, taken by the police immediately after the victim was killed.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 8, 1982.

*Farless, Newton & Wyatt, Floyd H. Farless,* for appellant.
*F. Larry Salmon, District Attorney, Robert D. Englehart, Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.