## 38923. DOVER v. THE STATE.

WELTNER, Justice.

Larry Dover was convicted by jury of murdering his estranged wife, Linda Dover, by stabbing her, and sentenced to life imprisonment.

Linda Dover's mother, Mamie Jo Rowland, testified that Linda had been married to Dover for approximately ten years, and had separated from him on prior occasions, the last being on December 15, 1980. On that night, Linda had fled to her mother's house, distraught, dressed in a nightgown and housecoat. For the next ten days, Linda and her eight-year-old son, Todd, remained at the homes of her mother or her sister.

Mrs. Rowland further testified that on December 26, 1980, Linda went to the marital home and telephoned her mother from there at about 6:45 p.m., saying she would come by her mother's house in a few minutes. Linda failed to appear. Mrs. Rowland called the police late that night, met the police at the Dovers' house, unlocked the door with her key, talked to Dover and Todd, and searched through the house, looking under a bed and in a closet without finding Linda.

The next morning, December 27, Mrs. Rowland and several of her relatives arrived at the Dovers' house. Linda's brother saw blood spots on the back patio and found Linda's body in the crawl space beneath the house, wrapped in a bedspread. She had been stabbed six times.

That morning Lt. Detective Abernathy from the Cartersville Police Department was called to the Dovers' house, where he met two other officers. Mrs. Rowland stated in court that she instructed her son to give Detective Abernathy her key to the Dovers' house, and that she was particularly concerned about locating young Todd.

Mrs. Rowland testified that Dover had given her a key to the house after it was built, some eight months before the murder; that she entered the house whenever she wished, day or night; that the Dovers often entered her house at their pleasure; and that she had taken her friends to the Dovers' house when the Dovers were not at

home.

Detective Abernathy testified that he found no one in the house when he entered; that he saw a single bed in the rear bedroom covered only by a blanket; and that he cut out the section of the mattress with a bloodstain. He saw Linda's automobile parked in the carport. Dover's truck was missing.

Detective Abernathy left the house around noon, instructing another officer to secure the crime scene. About 4:00 p.m. he returned with investigators from the state crime laboratory, entered the house without a warrant, searched the house thoroughly, and seized a number of items which were later introduced at trial.

That evening an arrest warrant was issued for Dover, and he turned himself in to the police the following day. His truck was recovered in a secluded area of Paulding County.

The child, Todd, testified that after eating supper with his mother and father on December 26, he and his father drove down the road to deliver a present; that his father realized that he did not have the present with him, and returned to the driveway; that his father stepped into the house and left him waiting for a long time; that he tired of waiting and knocked on the locked door of the house, but could not enter; that his father came back to the truck and took him to visit several relatives; that his mother was not in the house when they returned that night; and that early the next day, his father drove him to his paternal grandmother's house.

A forensic serologist stated at the trial that the blood samples from Linda Dover belonged to International Blood Group A, as did blood on a mattress and a pillow from the Dovers' house. That blood of human origin was found on the patio and on the bedroom curtain; and that blood of indeterminate origin was found on gloves and lint material recovered from the dryer in the Dovers' house, from scrapings from the sink and bathtub, and from inside the pocket of trousers worn by Dover when he was taken into custody.

Linda's sister stated that she went to the Dovers' home on November 16, 1980, after Linda had telephoned her crying; that she assisted Linda moving out of the house; and that she heard Dover curse Linda and threaten to kill her.

A friend of Linda's testified that she had seen Dover argue with Linda and knock her to the floor. Other witnesses were permitted to testify over objection that Linda had recounted to them that Dover had abused her sexually, and attempted to choke and smother her.

Dover testified that after supper on December 26, he left the house with Todd to deliver a present; that he drove back home and walked into the house *with Todd* after he discovered he did not have the gift; that he picked up the present and immediately left to visit his

relatives; that Linda was not in the house when he returned that night; and that he did not worry about her, because she often did not spend the night there. He explained that early the following morning, he left Todd at his mother's house; that he checked into a hotel under a fictitious name, because he planned to meet an unnamed woman there; that while driving around town he saw his brother, who told him that the police were looking for him; that he hid his truck on the advice of his brother; and that he had no knowledge of the circumstances of Linda's death. He agreed with Mrs. Rowland, that he had given her the key, and that "[s]he was welcome to [his] house anytime she wanted to come."

1. Dover does not dispute that the police may make a prompt warrantless search of the scene of a homicide to see if there are other victims, or to take other emergency action. Mincey v. Arizona, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978); *Gilreath v. State*, 247 Ga. 814 (279 SE2d 650) (1981). However, he argues that during such searches, only evidence discovered in plain view may be seized. He contends that Mrs. Rowland lacked authority to consent to a further search of the premises.

Dover admitted in court that he had given the house key to his mother-in-law, and that she was welcome in his house at any time. No evidence was presented to contradict Mrs. Rowland's assertion that she enjoyed unrestricted access to the house.

The placing of a house key in the hands of one outside the household is not an unrestricted authorization to enter at will, but must be viewed in the light of common practice. It includes the authority of the holder of the key to enter the dwelling, in the absence of the householders, when circumstances reasonably indicate that such entry might be necessary in the interest of the householders, or of safeguarding the dwelling.

The discovery of the dead body of the daughter, and the unaccounted for absence of the young grandson, are undeniably within the ambit of such an authorization. Under these circumstances, Mrs. Rowland's authority properly could be delegated to the police. See United States v. Matlock, 415 U. S. 164 (94 SC 988, 39 LE2d 242) (1974); State v. Kellam, 48 N. C. App. 391 (269 SE2d 197) (1980). The trial court did not err in denying the motion to suppress.

2. Dover contends that the State refused to allow his attorneys to interview Todd in private. The trial court denied Dover's motion relative to this interview, apparently finding that the State was not hindering access to the witness. The record shows that the child's guardian, Mrs. Rowland, decided not to submit Todd to an interview without the State also being present. A witness may refuse to be

interviewed prior to trial, *Rutledge v. State,* 245 Ga. 768, 770 (2) (267 SE2d 199) (1980); and when the witness is a child, the child's guardian may make this decision.

3. Dover contends that his right to a fair trial and effective assistance of counsel were denied by an order of the Cartersville Police Department barring police from discussing with attorneys any case under investigation. The district attorney labeled this order an "administrative blunder." Although this type of ban might potentially violate a defendant's constitutional rights, Dover has failed to show that he was harmed by the order. This enumeration of error is without merit.

4. The State called Dover's mother as a witness. Claiming surprise at one of her answers, the prosecution sought to impeach the witness based on her prior statement to the police. Defense counsel moved for production of the statement, and the court took the motion under advisement. Dover failed to invoke a ruling of the court as to this motion, and thus waived the issue for the purposes of appeal. See *Timberlake v. State,* 246 Ga. 488 (3) (271 SE2d 792) (1980).

5. Dover asserts that the court improperly admitted the hearsay declarations of Dover's prior abuses of Linda.

Linda's sister testified that she heard Larry threaten to kill Linda. This testimony is not hearsay, as it is not an out-of-court statement offered to prove the truth of the matter asserted. See *Momon v. State,* 249 Ga. 865 (294 SE2d 482) (1982). The sister witnessed the incident itself, which was properly admitted to show Dover's state of mind and motive. See *Nicholson v. State,* 249 Ga. 775 (294 SE2d 485) (1982).

In *Momon v. State,* supra, at pp. 2-4, we clarified Code Ann. § 38-302, regarding the admissibility of evidence to explain conduct: "Code § 38-302 provides: 'When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence.'. . .

"To prevent an overly broad interpretation of Code § 38-302, we adopt the following: When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. Green, Ga. Law of Evidence, § 300 (1957); *Brewer v. Henson,* 96 Ga. App. 501, 502 (100 SE2d 661) (1957). But where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc., on which he or she acted shall not be admissible under Code § 38-302."

Several witnesses testified that Linda told them that she moved out of her house, contacted an attorney about divorce proceedings, or took other actions, because of her husband's violence and threats. Here, however, Linda's conduct was not at issue, and her declarations regarding Dover's actions are not admissible to explain *his* conduct. *Momon v. State,* supra.

Although the hearsay declarations of Linda were improperly admitted, this evidence was cumulative. Direct testimony was offered by her sister as to Dover's violence and threats toward Linda. Furthermore, Mrs. Rowland testified about Linda's frantic flight to her house in the middle of the night, from which abuse could be inferred circumstantially.

We find that the evidence properly admitted is overwhelming as to Dover's guilt, and that the error in allowing the hearsay is harmless beyond a reasonable doubt. Harrington v. California, 395 U. S. 250 (89 SC 1726, 23 LE2d 284) (1969). Accordingly, we need not address the issue of whether Dover's Sixth Amendment right to confront witnesses was violated.

6. Dover's assignment of error to the admissibility of the photographs is without merit.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., who concurs in the judgment only, and Bell, J., not participating.*

DECIDED NOVEMBER 2, 1982 —
REHEARING DENIED NOVEMBER 16, 1982.

*Cook & Palmour, Bobby Lee Cook, Vaughan & Tilley, David N. Vaughan, Jr., Velma C. Tilley,* for appellant.

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney, Michael J. Bowers, Attorney General, Victoria H. Soto, Staff Assistant Attorney General,* for appellee.