43249. HOOTEN v. THE STATE.
(343 SE2d 481)

BELL, Justice.

The appellant, Charles Hooten, was convicted of the murder of his wife, Dorothea La Via, and received a life sentence.[1] He appeals, and we affirm.

On December 25, 1984, Deneal Kuhar visited the home of her

---

[1] The murder occurred on the night of December 25-26, 1984. Hooten was indicted on January 25, 1985, tried on March 11-12, and sentenced on March 13. Hooten filed a motion for new trial on April 3. The court reporter certified the transcript on September 27, 1985, and Hooten's motion for new trial was denied on October 18. Hooten filed his notice of appeal on November 13, 1985, and the record was docketed in this court on February 27, 1986. The case was submitted for decision without oral arguments on April 11.

mother, Dorothea La Via, and her stepfather, the appellant, to have Christmas dinner. During the meal an argument occurred between Hooten and La Via concerning her relationship with her ex-husband and her drinking problem. Kuhar left her mother's house at about 5:15 p.m., and returned to her own home.

Mr. Hooten testified that at about 6:00 p.m. La Via informed him she was going back to her ex-husband. He added that he gave her $50 and told her to go, and that she left, taking the money and her car. Shortly after six o'clock that evening La Via arrived at the residence of Jack Henley, which was about five or six blocks from her home. Henley rented a room in a house owned by Clarence Kitchens. Several other persons also lived there, including Lonnie Kitchens, Clarence's son, and Anthony Walsh, Clarence's nephew. La Via had lived with Henley in June and July of 1984 during a period of separation from Hooten. When La Via arrived she told Henley her husband had kicked her out of her house and asked if she could stay with him. Henley asked Kitchens if La Via could stay, and Kitchens said that she could. Henley told La Via he was expecting his girl friend, Ellen Barfield, and that they would be going out. At about 6:30 Barfield arrived, and Henley left with her. At 11:00 to 11:15 p.m. Henley and Barfield returned to Henley's residence to get medication to relieve chest pains Henley was experiencing. When Henley entered the house La Via was on the couch and Walsh was on a loveseat. La Via asked Henley if he wanted her to take him to the hospital. He declined her offer, explaining that Barfield was waiting for him in the car. Mr. Henley got his medicine and left. According to Walsh, La Via got up after Henley left, said she was going home, and left.

At 12:50 a.m. on December 26, 1984, Detective Richard Adams of the Hapeville Police Department saw a yellow cab parked in the parking lot of a local elementary school. The detective, who was in plainclothes and was driving an unmarked car, drove around the block and stopped his car in back of the cab. Subsequently, he observed the cab exit the parking lot with its headlights turned off. Detective Adams followed the cab, whose driver turned on its headlights only after traveling approximately three blocks from the parking lot. At that time Detective Adams called in the tag number of the cab and asked that the cab be stopped by a uniformed policeman in a marked police car. Detective Adams followed the cab until it was stopped by Sergeant Summerville of the Hapeville Police Department. The driver of the cab was Hooten, who told the officers that he was looking for his wife. He further told them that he thought her ex-boyfriend lived behind the school, and that he thought that was where she had gone. Following their conversation with Hooten, the officers allowed him to go home.

At 9:00 a.m. on December 26, 1984, the body of La Via was found

in a grassy area about 13 feet from where Hooten's cab had been parked when it was first observed by Detective Adams. The cause of La Via's death was determined to be strangulation, and the autopsy also revealed a number of abrasions, lacerations, and bruises. La Via was not wearing shoes, and none were found at the scene.

The Hapeville Police located Hooten and informed him of his wife's death, and asked for permission to search his house, which he gave. During the search a pair of gray boots were found in a bedroom closet and a gold necklace was found in the bathroom. Officers also found broken glass on the living room floor, on a coffee table, and in a trash can, as well as a refrigerator handle which was lying on the kitchen counter wrapped in a towel. Both Henley and Lonnie Kitchens testified that La Via was wearing the gray boots the last time they saw her. In addition, Kuhar testified that when she left her mother's house Christmas evening, the refrigerator handle was attached to the refrigerator, and her mother was wearing the gold necklace.

Hooten testified that he did not see La Via again after she left the house at 6:00 p.m. on December 25, and that he did not know whether La Via was wearing the gold necklace or gray boots at that time, or how they got in the house where they were found.

1. In his first and only enumeration of error Hooten argues that the trial court erred in permitting hearsay testimony describing Hooten's prior abuses of La Via. In this regard several witnesses testified that La Via had told them that Hooten had beaten her and that she was afraid of him.

" 'In a murder prosecution, evidence of prior quarrels and difficulties between the defendant and the victim, which persist until the time of the killing, thereby shedding light upon the motive of the killing and explaining conduct, is admissible. (Cits. omitted.)' " *Nicholson v. State*, 249 Ga. 775, 777 (2) (294 SE2d 485) (1982) (quoting *Gunter v. State*, 243 Ga. 651, 656 (256 SE2d 341) (1979)). In the present case Hooten acknowledges this rule, but contends that the hearsay testimony offered to prove the prior difficulties between him and the victim was not competent evidence thereof.

The hearsay testimony in question was not admissible under OCGA § 24-3-2, *Dover v. State*, 250 Ga. 209 (5) (296 SE2d 710) (1982), and it is problematic whether it was admissible under OCGA § 24-3-1 pursuant to the theory outlined in *Irby v. Brooks*, 246 Ga. 794 (1) (273 SE2d 183) (1980). However, we find it unnecessary to reach the merits of this issue, since, even if the admission of the hearsay statements was error, such error would be harmless. This is so because Hooten testified that he had slapped his wife on three different occasions, and because there was other non-hearsay evidence of the deteriorating relationship between La Via and Hooten. See *Faircloth v. State*, 253 Ga. 67 (3) (316 SE2d 457) (1984); *Dover v. State*, supra,

250 Ga. at 213.

2. We have reviewed the record in a light most favorable to the jury's verdict, and find that the evidence was sufficient to authorize a rational trier of fact to find Hooten guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 28, 1986.

*J. Douglas Willix*, for appellant.

*Lewis R. Slaton, District Attorney, Michael J. Bowers, Attorney General*, for appellee.