## S01A1236. HARRIS v. THE STATE.
(554 SE2d 458)

CARLEY, Justice.

A jury convicted Preston Lewis Harris of malice murder and two alternative counts of felony murder, armed robbery, theft by taking and possession of a knife during the commission of a felony. Concluding that the evidence sufficiently supported the verdict as to malice murder, the trial court imposed a life sentence for that offense, a concurrent life sentence for armed robbery, a consecutive ten-year term for theft by taking, and a concurrent five-year term for the weapons offense. See *Malcolm v. State*, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993). Following the denial of a motion for new trial, Harris brings this appeal.[1]

1. Harris admits that he killed Tyrone Gay, but urges that, as a matter of law, he is not guilty of malice murder. He contends that the homicide was justified because he was forced to defend himself against a sexual assault by the victim.

Harris met Gay in Atlanta and accepted an invitation to spend the night at the victim's Gwinnett County apartment. Despite some sexual innuendoes, the night passed without incident and, a few days later, Harris contacted the victim and asked for lodging. The victim agreed and drove into Atlanta to pick him up. He arrived to find both appellant and an acquaintance known only as "Rodney," and the two accompanied him back to his apartment. After Rodney left, appellant voluntarily engaged in a homosexual act with Gay. Thereafter, the victim went to purchase cocaine for Harris' consumption. After the victim returned with the drugs, they began another sexual encounter, but appellant became upset. He returned to the living room where he smoked the rest of the cocaine and drank more beer. When Gay continued to make suggestive remarks, Harris retreated toward the kitchen. The victim followed and became increasingly insistent. Harris picked up a knife and stabbed Gay multiple times. The victim ultimately died from massive bleeding caused by a knife wound to his heart and lung. Harris fled to Tennessee in Gay's automobile, taking several items of the victim's property from the apartment. The vehicle was found in Chattanooga a short time later. The driver informed the officers that he obtained the car from Harris. The Tennessee authorities brought Harris in for questioning, and he gave them a statement. When the Gwinnett County officers arrived shortly there-

---

[1] The crimes occurred on October 25, 1998. The grand jury indicted Harris on April 14, 1999. The jury found him guilty on November 22, 1999. The trial court entered its judgments of conviction and imposed the sentences on November 22, 1999. Appellant filed a motion for new trial on December 13, 1999, and the trial court denied that motion on March 15, 2001. He filed a notice of appeal on April 2, 2001, and the case was docketed in this Court on May 16, 2001. Harris submitted the appeal for decision on August 14, 2001.

after, he also made a statement to them.

A person is justified in using deadly force "only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). Thus, a homicide is not·justified if the degree of force used by the defendant exceeds that which a reasonable person would believe necessary to defend against the victim's unlawful actions. See *Clark v. State*, 271 Ga. 27, 29 (2) (518 SE2d 117) (1999); *Hickman v. State*, 186 Ga. App. 118 (1) (366 SE2d 426) (1988). After hearing the evidence and the trial court's instructions on self-defense, the jury found that Harris' use of a knife to stab Gay multiple times was excessive and not reasonably necessary to defend against the type of assault which he attributed to the victim. *Clark v. State*, supra at 28 (1). Construing the evidence most strongly in favor of the verdict, it was sufficient to authorize a reasonable trier of fact to find him guilty of malice murder and of the other offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Harris filed a post-trial motion to compel the State to identify a latent fingerprint found in the victim's car. The purpose of identifying the print was to determine whether it might have been left by Rodney, whose last name was unknown. According to appellant, Rodney was potentially an important defense witness who could corroborate that the victim was a homosexual and, thus, bolster the claim of justifiable homicide. Harris enumerates the denial of the motion as error.

Unlike DNA testing, the identification procedure requested by Harris would not prove his innocence. He admitted stabbing the victim, and the only question was whether he acted in self-defense. According to appellant, Rodney was not even present at the time of the homicide, because he left Gay's apartment some time previously. Therefore, Rodney could not give eyewitness testimony about the immediate circumstances leading to the stabbing. In fact, Harris admitted that Rodney left before Gay broached the topic of sex. Thus, he could not even corroborate the victim's sexual orientation.

The jury heard considerable evidence showing that the victim was a homosexual, including graphic testimony about photos of nude men that he apparently took. Even if the testing had shown that the print was Rodney's and if he could be located and was prepared to testify as Harris contends, a new trial still would not be authorized, as he could only provide cumulative testimony which would be unlikely to produce a different result. OCGA § 5-5-23; *Spann v. State*, 263 Ga. 336, 337 (3) (434 SE2d 54) (1993). See also *Davis v. State*, 244 Ga. App. 345, 348 (6) (535 SE2d 528) (2000). The trial court cor-

rectly denied Harris' post-trial motion for identification of the fingerprint.

3. Appellant enumerates as error the admission of both of his in-custody statements. The evidence produced at the *Jackson-Denno* hearing authorized the trial court to find that Harris made his first statement only after the Tennessee authorities advised him of the *Miranda* rights and obtained a written waiver. The failure at the outset to identify the specific subject of the interrogation as the murder of Gay does not render the ensuing statement inadmissible. *Christenson v. State*, 261 Ga. 80, 85 (3) (402 SE2d 41) (1991). Harris spoke to the officers readily and did not ask for legal representation. "Once *Miranda* warnings are given and a person in custody gives a statement to police without invoking his right to remain silent and without requesting an attorney, he has in effect waived his rights." *Aldridge v. State*, 258 Ga. 75, 76 (3) (365 SE2d 111) (1988). "[U]se of trickery and deceit to obtain a confession does not render it inadmissible, so long as the means employed are not calculated to procure an untrue statement. [Cit.]" *State v. Ritter*, 268 Ga. 108, 110 (1) (485 SE2d 492) (1997). Thus, a mere overstatement by the investigators as to how much inculpatory evidence they presently possessed does not affect the admissibility of Harris' statement. Moreover, his admission was not induced by any hope of benefit or threat of punishment, since "admonitions to tell the truth will not invalidate a confession. [Cits.]" *State v. Roberts*, 273 Ga. 514, 516 (3) (543 SE2d 725) (2001). "The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it." OCGA § 24-3-51. Harris himself raised the issue of the severity of the sentence he might receive for his acts, and the officers did not jeopardize the admission of his statement by pursuing that topic with him. "[T]his simply made the defendant aware of potential legal consequences associated therewith. [Cit.]" *Davis v. State*, 245 Ga. App. 508, 509 (538 SE2d 159) (2000). Compare *State v. Ray*, 272 Ga. 450, 452 (2) (531 SE2d 705) (2000). The trial court did not err in admitting the Tennessee statement for the jury's consideration.

Because the initial statement was not "tainted," Harris' subsequent admission to the Gwinnett County authorities is not subject to the "fruit of the poisonous tree" doctrine. See *Moore v. State*, 263 Ga. 11 (1) (427 SE2d 766) (1993). Although he contends that those officers should have obtained an additional *Miranda* waiver from him, that was unnecessary considering the continuing nature of the interrogation and the short interval between the original waiver and his statement to the Georgia investigators. *McKenzie v. State*, 187 Ga. App. 840, 844 (4) (371 SE2d 869) (1988). Encouragement by the Tennessee police to tell the truth to the Gwinnett officers does not

compromise the admissibility of the statement which he gave to them. *State v. Roberts*, supra. That subsequent admission was not induced by any hope of benefit or fear of injury, and the trial court properly admitted it into evidence.

4. Although Harris enumerates as error the trial court's failure to charge on voluntary manslaughter as a lesser included offense, he did not request such an instruction. While a trial court may charge on a lesser included offense on its own motion, the "failure to do so, without a written request . . . , is not error." *State v. Stonaker*, 236 Ga. 1, 2 (2) (222 SE2d 354) (1976). Moreover, appellant expressly declined the trial court's offer to give an instruction on voluntary manslaughter. Having elected an all-or-nothing strategy pursuant to which the jury could only find him either guilty of murder or not guilty by reason of justification, he cannot complain of the consequences of that decision. *Jackson v. State*, 234 Ga. 549 (216 SE2d 834) (1975).

5. Relying on the "necessity" exception, Harris sought to introduce the pre-trial statements of two of Gay's friends who identified him as a homosexual. The trial court determined that the evidence was inadmissible because of a lack of diligence by the defense in locating the potential witnesses. Appellant enumerates this ruling as error.

One of the determinative factors in the admissibility of evidence under the necessity exception is whether the party offering the evidence has made a reasonable effort to locate the hearsay declarant and to ensure his presence at trial. This is a strict standard. *Holmes v. State*, 271 Ga. 138, 139 (2) (516 SE2d 61) (1999). In applying that standard, "[i]t is within the sound discretion of the trial court to determine the unavailability of a witness and a party's diligence in searching for that witness. [Cit.]" *Battle v. State*, 244 Ga. App. 771, 774 (536 SE2d 761) (2000). Considering that the two were friends of the victim, they could be reticent to make themselves available to the defense. An investigator working for trial counsel made several unsuccessful attempts to contact the two friends at their last known home address. Despite receiving information indicating that they still lived there, no effort was made to verify that report with the apartment manager. At most, Harris showed a lack of pre-trial service of subpoenas on the two witnesses, and did not demonstrate an inability to serve them after a diligent, but unsuccessful effort. Under these circumstances, the trial court was authorized to conclude that the two were not "unavailable" so as to render their pre-trial statements admissible. See *Rosser v. State*, 211 Ga. App. 402, 405-406 (1) (439 SE2d 72) (1993), overruled on other grounds, *Livingston v. State*, 268 Ga. 205, 209 (1) (486 SE2d 845) (1997). Compare *Holmes v. State*, supra; *Battle v. State*, supra. As the trial court did

not abuse its discretion, its evidentiary ruling will not be disturbed.

Moreover, the state did not dispute the victim's sexual orientation. Other evidence to that effect was proffered and admitted for the jury's consideration. Therefore, it was not crucial for the defense to introduce the cumulative statements of the victim's friends. The only question for the factfinder was whether Harris committed a murder or a justifiable homicide. The victim's two friends had nothing to add to that issue. Thus, even if the defense had shown that they were unavailable and that their statements were trustworthy, exclusion of the hearsay evidence still would not have constituted reversible error. See *Hooten v. State*, 256 Ga. 31, 33 (1) (343 SE2d 481) (1986).

6. Several enumerations of error relate to the jury charge.

(a) Appellant requested a charge dealing with the credibility of a State witness who testifies under a grant of immunity or promise of leniency, but the trial court refused to give it based upon a lack of evidentiary support. The record shows that the trial court ruled correctly, as all witnesses for the prosecution who were facing criminal charges expressly denied receiving such a grant or promise in exchange for their testimony against Harris. A request to charge must be authorized by the evidence. *Kessel v. State*, 236 Ga. 373, 374 (2) (223 SE2d 811) (1976).

(b) In charging on prior inconsistent statements, the trial court made what appellant concedes was a mere slip of the tongue. Although he enumerates the instruction as error, he does not contend that the misstatement was harmful and argues only that it was never corrected. Accordingly, this enumeration is without merit. *Gober v. State*, 247 Ga. 652, 655 (3) (278 SE2d 386) (1981).

(c) Harris asserts that when instructing on "felony murder," the trial court erred in referring to that crime as "murder." There is only one offense of "murder" which can be "committed *either* with 'malice aforethought' *or* while 'in the commission of a felony.' [Cit.]" (Emphasis in original.) *Lumpkins v. State*, 264 Ga. 255 (1) (443 SE2d 619) (1994). See also *Leutner v. State*, 235 Ga. 77, 79 (2) (218 SE2d 820) (1975). Thus, the trial court did not err in using the term "murder" in connection with its instructions on the alternative felony murder charge.

(d) The trial court did err in charging on the inference of an intent to kill arising from use of a deadly weapon. *Harris v. State*, 273 Ga. 608, 609 (2) (543 SE2d 716) (2001). However, the error was not of constitutional magnitude. Compare *Pace v. State*, 274 Ga. 69, 70 (2), fn. 9 (548 SE2d 307) (2001). While in *Harris*, the evidence of malice was weak, here it is strong and borders on being overwhelming. Appellant claimed that he was defending against an unlawful sexual assault, but he himself initiated the fatal meeting by contacting the victim and he acknowledged engaging in sexual activity prior to stab-

bing him multiple times. He also admitted that, before the homicide, he had several opportunities to leave the victim's apartment and chose to remain. He did not call the police to report that he had been assaulted by the victim, and he delayed his flight long enough to steal numerous items of Gay's property, including his automobile. Thus, the charge, though erroneous, is harmless under the particular circumstances of this case. Compare *Harris v. State*, supra.

(e) Contrary to appellant's contention, review of the record shows that the trial court's recharge did instruct the jury that the burden was on the State to prove intent and to disprove self-defense beyond a reasonable doubt.

7. The trial court permitted the jurors to refer to a transcript of Harris' statement to the Gwinnett County authorities while they were listening to a tape recording of that statement. The State provided the transcript to defense counsel before trial, and the sufficiency of its authentication was not challenged below. *Carey v. State*, 257 Ga. 134, 135 (2) (356 SE2d 507) (1987). Harris raised only a general objection to the use of the transcript, asserting that the jury should hear only the tape. This is without merit, as the record shows that the trial court took "particularized safeguards" to insure the jurors' limited consideration of the transcript. *Slakman v. State*, 272 Ga. 662, 666 (2) (533 SE2d 383) (2000). See also *Washington v. State*, 268 Ga. 598, 600 (3) (492 SE2d 197) (1997).

8. The trial court denied Harris' *Batson* motion and upheld the State's use of a peremptory strike to remove one of two African-Americans from the jury panel. As the reason for using the strike, the prosecution relied upon the prospective juror's acknowledgment of a possible subconscious bias toward a criminal defendant and against the State, based upon his own younger brother's experience with the criminal justice system. This admission of possible bias was a racially neutral reason for striking the juror. *Slade v. State*, 270 Ga. 305, 306 (1) (509 SE2d 618) (1998). Appellant urges that the State's explanation was only a pretext for racial discrimination, but no other prospective juror who was accepted acknowledged a possible lack of impartiality. The finding of the trial court is entitled to great deference, and will not be disturbed unless clearly erroneous. *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987). Because the finding that racial discrimination played no part in the peremptory strike here is not clearly erroneous, this enumeration is without merit.

9. Harris contends that his trial counsel was ineffective for failing to introduce documentary evidence or to call defense witnesses. At the hearing on the motion for new trial, however, she indicated that preservation of the right to opening and closing argument was used as a trial tactic. This is a recognized strategy of trial counsel

which, under the circumstances of this case, does not demonstrate ineffective assistance. *Dewberry v. State,* 271 Ga. 624, 625 (2) (523 SE2d 26) (1999).

Similarly, the degree to which an attorney chooses to cross-examine opposing parties' witnesses and the manner in which to attack their credibility fall within the ambit of trial tactics. "The fact that present counsel would pursue a different strategy does not render trial counsel's strategy unreasonable. [Cit.]" *Nhek v. State,* 271 Ga. 245, 248 (3) (517 SE2d 521) (1999).

Harris testified that his attorney told him that, if he requested a charge on voluntary manslaughter, he would likely be convicted and have no issues to raise on appeal. While admitting that she informed him of the likelihood of a conviction, she testified that she did not advise him that he would lose the right to appeal if he were found guilty of voluntary manslaughter. The trial court was authorized to believe trial counsel's testimony rather than that of appellant. Moreover, considering the strength of the evidence, including Harris' own inculpatory admissions, a conviction of at least voluntary manslaughter was almost a certainty and he would have no chance of prevailing on an appeal of the general grounds. Thus, even under appellant's own version of the advice he received from his attorney, his decision to seek an acquittal based on self-defense rather than a conviction of a lesser included offense was a well-informed one.

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 22, 2001.

*Rich & Smith, Randolph G. Rich,* for appellant.
*Daniel J. Porter, District Attorney, Phil Wiley, Niria D. Baggett, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Tammie J. Philbrick, Assistant Attorney General,* for appellee.

